IN THE UNITED STATES DISTRICT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAP-R-PRODUCTS COMPANY and PAP-R-TAINER, LLC, | ) ) ) |
| Plaintiffs, | ) ) ) Case No. 19-cv-77-SMY-RJD |
| v. | ) ) |
| STUDIO 503, LLC and MICHAEL WALTERS, | ) ) ) |
| Defendants. | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on the Joint Motion for Protective Order by Defendants and Interested Party Payload Group, LLC (Docs. 67 and 68). Plaintiffs filed a sealed Response to the Motion (Docs. 76 and 77). As explained further, the motion is DENIED IN PART and GRANTED IN PART.

**BACKGROUND**

Plaintiffs Pap-R-Products Company and Pap-R-Tainer, LLC manufacture coin rolls and wrappers, currency bands, and other paper products. Coin-Tainer, LLC, which is not a party to this suit, was in the same business. David Walters (Defendants Michael Walters' father) owned Coin-Tainer. Coin-Tainer and Pap-R-Products each owned 50 percent of Pap-R-Tainer between February 23, 2015 and October 29, 2018. The relationship between Pap-R-Products and Coin-Tainer deteriorated, with Pap-R-Products suing Pap-R-Tainer and Coin-Tainer in the Circuit Court of Clark County, Illinois in 2017. Pap-R-Products alleged that Coin-Tainer and David Walters engaged in a scheme to defraud Pap-R-Tainer and embezzle money from it. The Circuit Court

appointed a receiver to operate Pap-R-Tainer and ultimately approved the consolidation of Coin-Tainer manufacturing facilities in Minnesota and Pap-R-Products manufacturing facilities in Martinsville, Illinois, with the newly consolidated operation to be in Martinsville, Illinois. After buying out CT, Pap-R-Products and Scott Ware are now the sole owners of Pap-R-Tainer. Scott Ware owns Pap-R-Products and is not a party to this case.

Studio503, LLC acted as a sales representative for Coin-Tainer for several years, until February 2018. Defendant Michael Walters is sole owner of Studio 503. Pap-R-Tainer and Pap-R-Products filed this suit, alleging that Studio 503 was tasked with informing customers of the Coin-Tainer and Pap-R-Products consolidation and failed to do so. Plaintiffs further allege that Studio 503 and/or Michael Walters improperly cancelled orders and stole or destroyed Pap-R-Tainer property. Plaintiffs allege that as a result, they lost a significant amount of business goodwill, were forced to pay fines and extra expenses to fulfill existing orders, and lost profits.

Studio 503 filed a counterclaim against Pap-R-Products and Pap-R-Tainer n this suit under Minnesota state law for wrongful termination of its sales contract with Pap-R-Tainer. Studio 503 is seeking compensatory and consequential damages from Pap-R-Products and Pap-R-Tainer for lost commissions from the date of termination of its independent sales representative agreement, as well as future commissions.

In addition to sole ownership of Studio 503, Michael Walters is also a co-owner of another entity, Payload Group, LLC ("Payload"). Plaintiffs previously served a subpoena duces tecum on Payload, seeking (among other things) Payload's financial statements, tax returns, and documents reflecting the relationship and/or payments between Payload, Michael Walters, Studio 503, and Coin-Tainer. This Court quashed that subpoena, finding that it was overly broad, not directly related to the claims or counterclaims in this suit, not proportional to the needs of this case,

and placed an undue burden on Payload, a non-party.

In a separate case in this district (Case No. 19-cv-234-NJR), Coin-Tainer filed a trademark infringement suit against Pap-R-Products, Pap-R-Tainer, and Scott Ware. In that suit, Coin-Tainer produced certain e-mail exchanges that included David Walters, Michael Walters, and other individuals. Payload is referenced throughout these e-mails ("the Coin-Tainer e-mails"). At David Walters' June 2, 2020 deposition in this case, Plaintiffs' counsel asked him various questions about his current businesses and relationship with his son. Plaintiffs' counsel then attempted to question him about the e-mails and about his relationship to Payload. Defense counsel objected and did not allow Plaintiffs' counsel to continue this line of questioning. Plaintiffs filed the e-mails with the Court under seal for the Court's consideration of this motion. The Court will not identify any specifics of the Coin-Tainer e-mails in this Order, as they are subject to a Protective Order in Case No. 19-cv-234-NJR.

Along with Payload, Defendants Michael Walters and Studio 503 filed the instant motion. Defendants and Payload represent to the Court that Payload and Plaintiffs are the two principal competitors in a niche paper-products market, and that Plaintiffs are attempting to use discovery in this matter to probe Payload's business practices. Plaintiffs contend that David Walters is a key witness for Defendants in this case and that Defendants have made it clear they intend to rely on David Walters' testimony at trial regarding the specifics of the oral agreement between Studio 503 and Coin-Tainer. Therefore, Plaintiffs argue, they are entitled to question him about the Coin-Tainer emails to determine the extent of his bias for Michael Walters.

## Legal Standards

The Court may enter an order to protect a "party or person from annoyance, embarrassment, oppression, or undue burden or expense" by "forbidding inquiry into certain matters, or limiting

the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c).[1] The Court must determine that good cause exists for the protective order. *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). The provisions of the protective order should not be overly broad. *See id*. Like most discovery issues, the Court considers whether the discovery to be prohibited by the Protective Order is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

**Discussion**

Plaintiffs contend that they are entitled to conduct discovery to determine David Walters' bias towards his son, Defendant Michael Walters. Plaintiffs are correct that the bias of a witness is relevant, and in support of their argument they cite two cases in which the Seventh Circuit Court of Appeals found that it was proper for the district court to allow cross examination of a witness's bias during trial. *U.S. v. Manske*, 186 F.3d 770, 779 (7th Cir. 1999); *U.S. v. Jamison*, 635 F.3d 962, 966 (7th Cir. 2011). Plaintiffs also cite a district court case in which one party was allowed to conduct discovery to determine how much the opposing party paid its employees in order to establish the employees' bias. *Surgery Center at 900 North Michigan Ave., LLC v. American Physicians Assurance Corp.,* 317 F.R.D. 620, 625 (N.D. Ill. 2016).

The Court notes that during David Walters' deposition, it was appropriate for Plaintiffs'

---

[1] Rule 26(c)(1) requires the movant "to include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Defendants and Payload did not include such a certification, and Plaintiffs did not object to their motion on the basis that it lacks a certification. The deposition transcript attached to the motion shows that the parties discussed these issues and could not come to a consensus.

counsel to ask him questions about his current business relationship with Defendant Michael Walters. David Walters testified that his relationship with Michael Walters "has been as father and son." He testified that he owns two businesses: Coin-Tainer and a rental property company. Plaintiffs' counsel asked David Walters whether he invests in, is employed by, or is an independent contractor for any businesses other than his own, and he responded in the negative. Plaintiffs' counsel asked him whether he receives income from any business other than his own businesses, and he testified that he did not. Plaintiffs' counsel asked him whether Coin-Tainer has any business relationship with an entity associated with Michael Walters, and he testified that it does not.

Relevancy acts as a prohibition on "fishing expeditions." *See, e.g., E.E.O.C. v. United Air Lines, Inc.,* 287 F.3d 643, 653 (7th Cir. 2002). Defendants and Payload assert that Plaintiffs are attempting to conduct a fishing expedition to learn the business practices of their primary competitor, Payload. The Court sees a line between asking David Walters about his potential biases for Michael Walters, and probing Payload's proprietary information. The questions Plaintiffs' counsel asked at David Walters' June 2, 2020 deposition did not cross that line. Whether David Walters and Michael Walters are currently engaged in a business relationship is something the jury might consider when evaluating their testimony at trial. After reviewing the Coin-Tainer e-mails and David Walters' deposition testimony, the Court is not convinced that Plaintiffs' counsel was allowed to make an appropriate inquiry into whether David Walters and Michael Walters are currently conducting business together.

The Court acknowledges that, apart from determining whether or not David Walters and Michael Walters are currently conducting business together, the inner workings of Payload are irrelevant to this case and this Order does not give Plaintiffs' counsel carte blanche to ask David

Walters about what he knows of his son's business. Accordingly, the Court is denying in part and granting in part the Joint Motion for Protective Order filed by Defendants and Payload. To the extent the Court is denying the Joint Motion for Protective Order, Plaintiffs' counsel may ask David Walters about his role (if any) in Payload. Plaintiffs' counsel may ask David Walters about the content of the Coin-Tainer emails that were filed under seal in response to the Joint Motion for Protective Order. To the extent the Court is granting the Joint Motion for Protective Order, Plaintiffs' counsel may not ask David Walters questions about Payload's business practices other than to ask David Walters to explain his role in Payload, and to explain the content of the Coin-Tainer e-mails.

Finally, the Court addresses e-mail correspondence it received from counsel for Defendants, Plaintiffs, and from counsel representing Plaintiffs in Case No. 19-cv-234-NJR. Counsel is cautioned that when ruling on a motion, the Court only considers arguments and information that are properly filed with the Court or made to the Court during a hearing, in accordance with the Local Rules for the Southern District of Illinois. The Court did not consider any of the arguments or information presented in counsels' e-mails but noted that counsel representing Plaintiffs in Case No. 19-cv-234-NJR inquired as to whether the undersigned's ruling would affect discovery in Case No. 19-cv-234-NJR. This ruling has no effect whatsoever on discovery that has been or may be conducted in Case No. 19-cv-234-NJR.

## Conclusion

The Joint Motion for Protective Order by Payload Group LLC and Defendants (Doc. 67) is hereby DENIED IN PART and GRANTED IN PART. Plaintiffs' counsel may ask David Walters about his role (if any) in Payload. Plaintiffs' counsel may ask David Walters about the content of the Coin-Tainer emails that were filed under seal in response to the Joint Motion for

Protective Order. Plaintiffs' counsel may not otherwise ask David Walters questions about Payload's business practices.

**IT IS SO ORDERED.**

**DATED:   September 14, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly
United States Magistrate Judge**