**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **PAP-R-PRODUCTS COMPANY and PAP-R-TAINER, LLC,** | )<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| vs. | ) Case No. 19-CV-77-SMY<br>) |
| **STUDIO503, LLC and MICHAEL WALTERS** | )<br>)<br>)<br>) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs Pap-R-Products Company and Pap-R-Tainer, LLC (collectively, the "PRP companies") engaged Defendant studio503, LLC ("Studio") to act as a sales representative for their paper products. The relationship soured and various legal actions ensued, including the instant lawsuit (originally filed in Illinois state court) in which the PRP companies seek damages for breach of loyalty, tortious interference with contract, tortious interference with prospective economic advantage, conversion, and a declaratory judgment. Studio subsequently filed a counterclaim alleging that the termination of the independent sales representative agreement violated Minnesota law.

Now pending before the Court is the PRP companies' Motion for Partial Summary Judgment on Counterclaim (Doc. 70) to which Studio responded (Doc. 81). The PRP companies seek to limit any potential recovery on Studio's counterclaim to lost commissions for a 180-day period.[1] Studio argues that it is entitled to lost commissions from the date of termination through

---
[1] Plaintiffs do not concede liability on the counterclaim.

trial and other damages including lost profits.

## Background

The following relevant facts are undisputed: Studio and Pap-R-Products Company, which was operated by a Receiver at the time, had an informal independent sales representative agreement that was terminated by the Receiver on January 25, 2018. Studio claims damages resulting from the termination including, lost commissions in the amount of $28,905.00 per month, costs and attorney fees at a rate of $295.00 per hour, and unspecified lost profits (Doc. 72, pp. 10-11, 16-17). In its disclosures, Studio represents that the lost commissions are demonstrated by tax forms, the "general ledgers" of Pap-R-Tainer, LLC and Coin-Tainor Company, LLC (an entity absorbed by PRP Companies), and through the testimony of various lay witnesses. Studio has not disclosed an expert on damages and the record before the Court does not include evidence of a dollar amount of lost profits or a detailed accounting of lost commissions.

## Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact or where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

Because the informal independent sales representative agreement entered into by the parties is governed by Minnesota law, Minnesota's Termination of Sales Representatives Act,

Minn. Stat. §325E.37 ("MTSRA"), guides the Court's analysis. Pursuant to the MTSRA, a manufacturer may only terminate a sales representative agreement for "good cause."  Minn. Stat. § 325E.37, subdiv. 2(a).  The manufacturer must provide 90 days written notice and allow 60 days to correct the stated reasons for termination.  *Id.* Upon termination of the agreement:

> If a sales representative is paid by commission…the representative is entitled to be paid for all sales as to which the representative would have been entitled to commissions pursuant to the provisions of the sales representative agreement, made prior to the date of termination of the agreement or the end of the notification period, whichever is later, regardless of whether the goods have been actually shipped.

*Id*. subdiv. 4.

There being no "provisions of the sales representative agreement" on the record, Studio may seek commissions payable until "the end of the notification period" which is 180 days.  *See id.* subdiv. 3; *Wingert & Assoc., Inc. v. Paramount Apparel Inter., Inc.*, 458 F.3d 740, 742 (8th Cir. 2006).[2] Additionally, Studio may pursue other remedies including "reinstatement of the sales representative agreement, or damages"  and/or reasonable attorney fees and costs.  *Id*. subdiv. (4)(b); *Wingert*, 458 F.3d at 743-5.

Plaintiffs argue that Studio's damages are limited to 180 days of gross commission payments because there is no reliable evidence of other damages, including lost profits.  Relying on *RIO/Bill Blass v. Bredeson Associates, Inc.*, 1998 WL 27299 (Minn. App. Ct. 1998), Studio argues that its damages are not limited to commissions during the notification period.  But Studio's reliance on that case is misplaced.  There, the court held that a sales representative is entitled to damages on a breach of contract claim for sales made prior to termination *in addition to* 180 days of commission payments for sales made after termination.  Likewise, the damages in *Wingert* did

---

[2] Subdivision 3 specifies that "a sales representative agreement of indefinite duration shall be treated as if it were for a definite duration expiring 180 days after the giving of written notice of intention not to continue the agreement." No party has presented evidence of written notification of termination of the sales agreement.

not include lost commissions beyond the 180 day limit; rather, they included lost profits that were supported by expert testimony.  *Id*. 458 F.3d at 743.  As such, neither case stands for the proposition that the term "damages" includes commissions beyond the notification period.  Indeed, the MTSRA itself lists "damages" as a separate remedy from "commissions."  Studio's reference to civil rights legislation and employment law is also misplaced as it is neither Plaintiffs' employee nor an individual who should benefit from civil rights laws and remedies.

"The question of damages is essentially an issue of fact for the jury to decide . . . [and it] is entitled to wide deference as long as it is within the range of reasonable awards." *Pulkrabek v. Johnson*, 418 N.W.2d 514, 516 (Minn. App. Ct. 1988).  But, summary judgment on the issue of damages is appropriate if there are no genuine issues as to material facts.  Here, Studio has presented *no* evidence of damages in the form of lost profits or otherwise.  It must do more than speculate that there are damages.  In other words, it must provide "proof of a reasonable basis upon which to approximate the amount" of damages. *Leoni v. Bemis Co., Inc.*, 255 N.W.2d 824, 826 (Minn. 1977).  Simply asserting that it will present evidence of damages to a jury is insufficient to defeat summary judgment.  *See e.g. Krampf v. University of Minnesota*, 2020 WL 3410191 (Minn. App. Ct. 2020) (affirming summary judgment where there was no proof of damages resulting from a statutory violation).  Accordingly, upon establishing liability, Studio's damages will be limited to lost commissions during the 180-day notification period, reinstatement, and/or attorney fees.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment on Counterclaim (Doc. 70) is **GRANTED**.

**IT IS SO ORDERED.**

**DATED: February 8, 2021**

**STACI M. YANDLE**
**United States District Judge**